1  SEYFARTH SHAW LLP
   Ellen E. McLaughlin (IL 6181045) (*admitted pro hac vice*)
2  emclaughlin@seyfarth.com
   Cheryl A. Luce (IL 6313386) (*admitted pro hac vice*)
3  cluce@seyfarth.com
   233 S. Wacker Drive, Suite 8000
4  Chicago, Illinois 60606
   Telephone:     (312) 460-5000
5  Facsimile:     (312) 460-7000

6  SEYFARTH SHAW LLP
   Chantelle C. Egan (SBN 257938)
7  cegan@seyfarth.com
   560 Mission Street, 31st Floor
8  San Francisco, California 94105
   Telephone:     (415) 397-2823
9  Facsimile:     (415) 397-8549

10 Attorneys for Defendant
   UNITED STATES SOCCER FEDERATION, INC.
11

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15

16 HOPE SOLO,                          | Case No. 3:18-cv-05215 JD

17                Plaintiff,           | **DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT ITS MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)**
18        v.

19 UNITED STATES SOCCER FEDERATION,

20                Defendant.           | Date:       February 21, 2019
                                       | Time:       10:00 a.m.
21                                     | Dept.:      Courtroom 11
                                       | Judge:      Hon. James Donato
22
                                       | Complaint Filed:  August 24, 2018
23

24 I.     INTRODUCTION

25        Plaintiff Hope Solo's ("Solo") Opposition to Defendant U.S. Soccer's Motion to Dismiss the

26 Complaint Pursuant to Rule 12(b)(6) ("Opposition") fails to explain why her Complaint should survive

27 dismissal. Solo does not address U.S. Soccer's substantive arguments under the Equal Pay Act ("EPA").

28 U.S. Soccer argued in its opening brief that the Complaint should be dismissed because Women's

1

National Team ("WNT") and Men's National Team ("MNT") players do not play soccer in the same establishment, play in substantially different events, and have different pay structures that are incomparable as a matter of law. U.S. Soccer further argued that Solo fails to identify any MNT player who was paid more than her and that the pay equity clause in the WNT collective bargaining agreements ("CBAs") establishes U.S. Soccer's affirmative defense that WNT players are paid an equivalent share of the revenue that WNT games produced as compared to the revenue MNT games produced, and thus any hypothetical pay differential is based on a factor other than sex. Any one of these arguments, independently, justifies dismissal of the Complaint. Yet Solo addresses *none* of them. In fact, she concedes that her Complaint presents "a novel theory" in the men's and women's professional sports context that has no comparison in any EPA precedent. (Dkt. 33 p. 4.) Instead of explaining why she should be entitled to proceed on such "a novel theory," she advances only procedural arguments for why her Complaint is legally sufficient. These procedural arguments fail, and Solo's EPA claim should be dismissed. Solo's Title VII claim should also be dismissed because she did not exhaust her administrative remedies, which she wholesale fails to refute.

## II.     SOLO'S PROCEDURAL ARGUMENTS FAIL.

Solo advances four procedural challenges to U.S. Soccer's motion to dismiss: (1) that the Court should not look beyond the four corners of the Complaint to determine if it states a plausible claim for relief and thus ignore the CBAs, (2) that the CBAs lack authentication,[1] (3) that the Court should not take judicial notice of the FIFA regulations that set different guidelines for the WNT and MNT and contemplate separate teams for women's players and men's players, and (4) that U.S. Soccer cannot establish an affirmative defense in a Rule 12(b)(6) motion. These procedural challenges are unsupported by the precedent cited by either party and should be rejected.

### A.     The Court May Properly Consider the WNT and MNT CBAs Because They Are Central to Solo's EPA Claim.

Solo argues that the Court should not consider the CBAs that govern WNT and MNT pay and upon which her Complaint allegations depend. But Solo admits that the CBAs "are the reason why the [alleged] pay disparity exists." (Dkt. 33 p. 4.) Thus, they are central to her EPA claim. The cases cited

---

[1] Solo does not actually raise this argument in her Opposition but merely filed an Objection to the Declaration of Jay Berhalter in which she objects to the CBAs on several grounds.

by Solo acknowledge that documents that are central to a plaintiff's claim may properly be considered at the Rule 12(b)(6) stage. (*Id.*, citing *U.S. v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) (court may consider unattached evidence on which the complaint "necessarily relies"); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (extraneous document integral to the complaint and thus may be considered on a Rule 12(b)(6) motion).) Although Solo insists that she intends to challenge the CBAs as perpetuating the "wage differential that is the basis of plaintiff's claims," she does not argue that the CBAs are not what they appear to be, are defective in any way, inaccurately set forth the WNT and MNT pay structure, or contain any other disputed facts. Because Solo agrees that they are central to her EPA claim, they may properly be considered.

### B.   Solo Does Not Actually Dispute the Authenticity of the CBAs.

Although Solo does not raise any argument that the CBAs are inauthentic, she submits conclusory objections to the CBAs attached to the Berhalter declaration that include an objection to the fact that the CBAs are "unathenticated." (Dkt. 34 at 1.) Berhalter, indeed, authenticated the CBAs by establishing his personal knowledge of their authenticity (Dkt. 30 at 2, ¶¶ 3-5), and Solo's barebones objections fail to challenge the facts asserted in Berhalter's declaration. Moreover, Solo's only challenge to the CBAs is that they are "the reason why the (alleged) pay disparity exists." Setting aside that Solo has not asserted any facts identifying a male player who was paid more than she, this statement concedes that the CBAs establish the different WNT and MNT pay structures and are authentic documents. Solo thus fails to present any colorable challenge to the authenticity of the CBAs, which may be considered by the Court. *Coto*, 593 F.3d at 1038 (document properly considered on Rule 12(b)(6) motion where "the document's authenticity is not in question and there are no disputed issues as to the document's relevance").

### C.   The Court May Properly Take Judicial Notice of FIFA Regulations.

Solo does not dispute that the regulations of FIFA, the international governing body of the sport, referenced by U.S. Soccer are accurate and applicable to the WNT and MNT. The accuracy of the FIFA regulations, which are plainly available on FIFA's website, cannot be reasonably questioned. Rules of administrative bodies are appropriate for judicial notice. *Vargas v. Delivery Outsourcing, LLC*, No. 15-CV-03408-JST, 2016 WL 946112, at *2 (N.D. Cal. Mar. 14, 2016) (taking judicial notice of American

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT / CASE NO. 3:18-CV-05215-JD

Arbitration Association's Commercial Arbitration Rules and Mediation Procedures).  Further, materials on the Internet are commonly subject to judicial notice. *Crandall v. Starbucks Corp.*, 249 F. Supp. 3d 1087, 1099 (N.D. Cal. 2017).  Although Solo makes a flat request that the Court disregard the FIFA rules, Solo in no way explains why. The only case Solo cites in support of her argument for why they should not be considered is *Troy Group, Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1151 (C.D. Cal. 2005). *Troy Group*, however, is inapposite because it involved an e-mail exchanged between the parties that was being offered to establish the truth of the facts asserted and which were disputed. In contrast, Solo in no way disputes the FIFA rules or that they contemplate separate WNT and MNT teams. Accordingly, the Court should take judicial notice of them.

### D.     U.S. Soccer May Establish Its Affirmative Defense in a Rule 12(b)(6) motion.

In its opening brief, U.S. Soccer cited several cases (including cases in the EPA context) in which the federal courts allowed a party to establish an affirmative defense barring recovery at the Rule 12(b)(6) stage where the allegations and material incorporated into the complaint set forth everything necessary to satisfy the affirmative defense. (Dkt. 29 at 14.) Solo does not address these cases or challenge the fact that the CBAs establish U.S. Soccer's affirmative defense that any differential in pay is attributable to the revenue generated by WNT games as compared to the revenue generated by MNT games. Instead, she cites cases holding that the Complaint may be dismissed on the basis of an affirmative defense if the defense is indisputably established at the 12(b)(6) stage. (Dkt. 33 at 5, citing *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004) (affirmative defense may result in dismissal of complaint if it is "impenetrable")). Indeed, in *Broward*, the Seventh Circuit affirmed dismissal of the complaint pursuant to a Rule 12(b)(6) motion and specifically held that doing so is proper "when all relevant facts are presented" in the motion and pleadings. 682 F.3d at 690. Because Solo provides no real challenge to the facts in the CBAs or point to any relevant facts that are omitted at this stage, U.S. Soccer's statutory affirmative defense that any pay differential was based on a "factor other than sex" is a proper ground for dismissal of the Complaint.

1

2

### III. SOLO'S "NOVEL" EPA CLAIM SHOULD BE DISMISSED BECAUSE IT IS LEGALLY INSUFFICIENT.

3

4          For the reasons stated in U.S. Soccer's opening brief, Solo's Complaint fails to state a plausible

5    claim under the EPA for several, independent reasons, any one of which warrant dismissal.  First, Solo

6    fails to plead that WNT and MNT players play in the same establishment. Solo does not dispute in her

7    Opposition that the WNT and MNT play in different domestic and international championships in

8    different countries and venues at different times, and such physically separate spaces are presumptively

9    different establishments under the EPA. (Dkt. 29 at 7-8.) Although separate physical spaces can be

10   considered to be a single "establishment" in "unusual circumstances," such circumstances are not

11   present here (*id.* at 8-10), nor has Solo argued that they are present. The WNT and MNT have different

12   CBAs negotiated by separate collective bargaining units, cannot interchange work locations, have

13   different coaches directing their squads, and face different international competition. (*Id.*) It is simply

14   implausible that she could ever allege that the WNT and MNT form a single establishment under the

15   EPA.

16          Second, the WNT and MNT players perform different work for different pay. The WNT and

17   MNT have completely distinct obligations and responsibilities for which they are paid under their

18   respective CBAs and receive different pay for their different work (most notably, the WNT receiving

19   guaranteed salaries plus benefits and the MNT receiving "pay-for-play" match appearance fees). (Dkt.

20   29 at 10-11.) In light of these differences, they do not have the kind of "standardized jobs" that are

21   amenable to an EPA claim. (*Id.* at 11, citing *Sims-Fingers v. City of Indianapolis*, 493 F.3d 768 (7th Cir.

22   2007).)

23          Third, the WNT's guaranteed salaries with no negative repercussions and benefits are

24   incomparable to the MNT's high-risk "pay-for-play" appearance fees under the EPA as a matter of law.

25   Asking the Court to make an apples-to-oranges comparison and decide which structure is better seeks a

26   normative judgment that is outside the scope of what the EPA addresses. (Dkt. 29 at 12-3.)

27          Fourth, Solo fails to identify any MNT player who was paid more than she. (Dkt. 29 at 13-14.) In

28   fact, under the "pay-for-play" structure that MNT players have, MNT players who did not consistently

make the MNT roster would have been paid less than Solo. (*Id.*)

Finally, the pay equity clause in the WNT CBA establishes that any alleged pay differential is "based on a factor other than sex," which affirmatively bars Solo's EPA claim pursuant to 29 U.S.C. § 206(d)(1)(iv). (Dkt. 29 at 14-15.) The pay equity clause states that if the ratio of aggregate compensation of WNT players to the aggregate revenue from all WNT games is less than the ratio of the aggregate compensation of MNT players compensation to the aggregate revenue from all MNT games, then U.S. Soccer will make a supplemental payment to make the ratios equal. (*Id.*) Therefore, any pay differential is necessarily proportional to the different revenue generated by the teams' games and is a "factor other than sex" that is not attributable to discrimination as a matter of law.

## IV.   SOLO'S TITLE VII CLAIM MUST BE DISMISSED BECAUSE SHE FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES

Solo in no way disputes that she has failed to exhaust her administrative remedies under Title VII. Accordingly, Solo's Title VII claim should be dismissed.

## V.   CONCLUSION

Solo's Complaint fails to plead a claim upon which relief may be granted under the Equal Pay Act and has failed to exhaust her administrative remedies under Title VII.  Accordingly, the Complaint should be dismissed pursuant to Rule 12(b)(6).

DATED: January 22, 2019                          Respectfully Submitted,

SEYFARTH SHAW LLP

By: */s/ Ellen E. McLaughlin*
          Ellen E. McLaughlin*
          Chantelle C. Egan
          Cheryl A. Luce*

          Attorneys for Defendant
          UNITED STATES SOCCER FEDERATION, INC.
          *admitted pro hac vice*