Timothy W. Moppin, SBN 133363
Attorney at Law
2015 Junction Avenue
El Cerrito, California 94530
Telephone:   (510) 232-0442
E-Mail: timmoppin@yahoo.com
        timmoppin@aol.com

Richard M. Nichols SBN 166638
Attorney at Law
876 Arlene Way
Novato, CA 94947
E-Mail: Rnicholspc@gmail.com

Attorneys for Plaintiff
HOPE SOLO

UNITED STATES DISTRICT COURT

NORTHER DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOPE SOLO,<br><br>                   Plaintiff,<br><br>        v.<br><br>UNITED STATES SOCCER FEDERATION,<br><br>                   Defendants. | Case No.: 3:18-cv-05215 JD<br><br>**FIRST AMENDED COMPLAINT FOR VIOALTION OF THE EQUAL PAY ACT AND DISCRIMINATION**<br><br>**DEMAND FOR JURY TRIAL** |

## PARTIES

1.  Plaintiff Hope Solo is an individual, and a resident of North Carolina.

2.  Defendant United States Soccer Federation ("the Federation"), is a not-for-profit corporation chartered in the State of New York that employs individuals that are selected as soccer players on the United States Women's National Soccer Team ("WNT").

3.  Plaintiff is informed and believes, and thereon alleges, that, at all times mentioned herein, each of the defendants sued herein, was the agent, servant, and employee of the remaining defendants, and in doing the things hereinafter alleged, was acting within the scope of its authority as such agent, servant, and employee, and with the permission and consent of the remaining defendants.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this controversy under 28 U.S.C. § 1331 by virtue of the fact that this is a civil action wherein the matter involves the application and interpretation of federal laws. Further, jurisdiction is proper under 28 U.S.C. § 1332 by virtue of the fact that the matter in controversy exceeds $75,000, and is between citizens of different states. Venue is properly laid in this District because the actions and activities which generated and are the subject of this Complaint, occurred in part within this District. Further, the defendants do substantial business in this District, and have a principal place of business in Chicago, Illinois.

## GENERAL ALLEGATIONS

5. For the time periods during which the violations alleged herein occurred, Plaintiff was an employee of defendant, the United States Soccer Federation, since she was selected as a soccer player on the United States Women's National Soccer Team ("WNT"). At all times relevant to the charges of violations of the Equal Pay Act and discrimination, the Federation also employed and continues to employ individuals selected as soccer players on the United States Men's National Soccer Team ("MNT").

6. Subsequent to winning the Olympic Gold Medal in 2004, 2008, 2012, and the 2015 World Cup Victory, the WNT entered into collective bargaining negotiations with the Federation. Given that the WNT provided its employer, the Federation, the same services, under the same working conditions, and in similar venues, for the same number, and often more matches each year and their MNT counterparts, the respective WNT collective bargaining agreement ("CBA") proposals always included a demand for WNT compensation equal to that paid per game and or annually to the MNT.

7. In each of the years 2004, 2008, 2012, and 2015, the WNT's demands for equal pay was rebuffed and summarily rejected by the Federation. To the extent that the CBA fails to include an equal pay clause, it is unconscionable and should be rescinded.

8. The WNT has enjoyed unparalleled success in international soccer, winning three (3) World Cup titles and four (4) Olympic Gold Medals – an accomplishment that no other country on the men's or women's side has reached in World Cup or Olympic competition. The WNT also has achieved numerous other first place wins in

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE EQUAL PAY ACT AND DISCRIMINATION
– 2 –

significant international tournaments and at all times relevant herein, was ranked number one (1) in the world, a position it held on a near continuous basis for at least seven (7) years.

9. Plaintiff's team won its third World Cup title on July 5, 2015. The game captured the hearts of approximately 23 million viewers, making it the most watched soccer game in American TV history. The team embarked on a post-Cup Victory Tour, which drew tens of thousands of fans to soccer stadiums across the United States and generated and deposited tens of millions of dollars into the Federation's coffers.

10. In fact, according to the Federation's 2016 annual report (*see* Exhibit 1, p. 54, Chart 1), it initially projected a combined net loss for the national teams of $429,929 for FY 2016 (April 1, 2015 – March 31, 2016). But thanks almost exclusively to the success of the WNT, the Federation projected a $17.7 million profit in connection with the success of the WNT teams. *Id.* Additionally, for FY 2017, the Federation projected a net profit from the WNT of approximately $5,000,000, while projecting a net loss of nearly $1,000,000 for the MNT. *Id.* at 57-58, Charts 2, 3.

11. Unfortunately, the WNT's on-field accomplishments and revenue generation have not resulted in plaintiff or her fellow players earning equal or better pay than MNT players. In fact, the women's compensation pales in comparison to that of the MNT players. This pay disparity exists despite the fact that, as the MNT and WNT's employer, the Federation is bound by federal law to compensate Plaintiff and her WNT teammates at least equally to the rate at which it compensates MNT players given that the women and men perform the same job duties; have jobs that require equal skill, effort and responsibilities; and perform their respective jobs under similar working conditions.

12. More specifically, the pre-match, match and post-match duties, as well as the skill, effort, responsibilities and working conditions of WNT players are substantially the same and/or greater than those of MNT players. The Federation, for example, expects both sets of players to:

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE EQUAL PAY ACT AND DISCRIMINATION
– 3 –

- maintain their conditioning and overall health such as by undergoing rigorous training routines (endurance running, weight training, etc.) and adhering to certain nutrition, physical therapy and other regimens.

- maintain their skills by, for example, attending training camps and frequent practices, participating in skills drills, and playing scrimmages and other practice events;

- travel nationally and internationally as necessary for competitive games, which are the same in length, physical and mental demand, and similar playing environment and conditions; and

- promote a positive image for soccer through media and other appearances.

The success of the WNT, however, has meant and continues to mean that the WNT spends more time in training camp, play far more games, travel more, and participate in more media sessions, among other things, than MNT players.

13. Despite all of these facts, plaintiff and similarly situated WNT players, have been paid and continue to be paid substantially *less* than MNT players.

14. The Federation's compensation structure for the WNT and MNT generally can be divided into four buckets: (1) compensation for games called Friendlies; (2) World-Cup-related compensation; (3) Olympics-related compensation and (4) compensation for sponsor appearances, ticket revenue and other monies.

15. <u>Friendlies</u>:  For the time periods during which the violations alleged herein occurred, the Federation paid top tier WNT players between 38% and 72% of the compensation the MNT players earn on a per game basis.

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE EQUAL PAY ACT AND DISCRIMINATION
– 4 –

16. Specifically, the Federation paid Plaintiff and other top tier WNT players, $72,000 per year to play a minimum of 20 Friendlies that year. Plaintiff and her WNT teammates also received a bonus of $1,350 for each Friendly victory. However, unlike the MNT, Plaintiff and her WNT teammates did *not* receive additional compensation if the WNT lost or played to a tie in a game). So, if the WNT lost all 20 games, Plaintiff and each of her WNT teammates received $72,000 for the year or only $3,600 per game; if the WNT won all twenty games, Plaintiff and her WNT teammates each received $99,000 for that year or $4,950 per game.

17. MNT players are also required to play a minimum of 20 Friendlies per year. They, however, receive a minimum of $5,000 to play in each game, regardless of the outcome. They can receive compensation ranging from $6,250 to $17,625 per game depending on the level of their opponent (FIFA-ranked 1-10, FIFA-ranked 11-25, or FIFA-ranked above 25) and whether they tie or win the game. So, if a MNT player loses all 20 Friendlies, he will earn $100,000 -- <u>$27,000 more than similarly situated WNT players and $1,000 more than WNT players who *win* all of their games.</u> If MNT players win all of their games against the various levels of competition they likely would face, they likely would earn an average of $13,166 per game or $263,320 in year. <u>A 20-game winning top tier WNT player would earn *38%* of the compensation of a similarly situated MNT player</u>. The attached chart (*see* Exhibit 2) illustrates these differences.

18. These numbers present an even starker contrast when considering that each game over 20 played by a WNT player earns that player either *no* additional compensation (for a tie or a loss) or maximum compensation of $1,350. Each additional game over 20 played by a MNT player earns that player between $5,000 (for a loss) or up to $17,625 for a win.

19. <u>World Cup</u>. The compensation afforded WNT players for World Cup competition is even more strikingly disparate than that for the Friendlies. WNT players earn only $30,000 *total* both for being asked to try out for the World Cup team and for making the team roster. MNT players, on the other hand, earn $68,750 each for making their team's roster. The pay structure for advancement through the rounds of World Cup

was so skewed that, in 2014, the MNT earned $9,000,000 for *losing* in the Round of 16, while the WNT earned only $2,000,000 for winning the World Cup tournament. In other words, the women earned four times less than the men while performing demonstrably better.

20. <u>Olympics</u>.  Notably, the WNT and MNT U23 players each earn $15,000 for qualifying for the Olympic team and another $15,000 each for making the roster.  The Federation's decision to pay the U 23 men, who are the MNT B Team, and women equal compensation for Olympic play only highlights the unjustified and discriminatory animus underlying its decision to pay women differently than men in nearly all other respects.

21. <u>Other Compensation</u>.  The disparity in pay trickles down to nearly every aspect of the WNT player/Federation employment relationship.  For the time periods during which the violations alleged herein occurred, the Federation, for example, paid men on the MNT a per diem of $62.50 for domestic venues and $75 for international venues, while paying the women on the WNT $50 and $60, respectively, even though the WNT are traveled for the same reasons.  Further, the Federation paid men on the MNT $3,750 for each sponsor appearance, while paying the women on the WNT $3,000 per appearance to do the exact same work. The list of pay disparities goes on and on.

22. There are no legitimate, non-discriminatory reasons for this gross disparity of wages, nor can it be explained away by any bona fide seniority, merit or incentive system or any other factor other than sex.

23. Therefore, plaintiff alleges and believes that she and similarly situated former and current WNT players have been discriminated against because of sex (female) in violation of the Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act.

WHEREFORE, plaintiff prays for judgment as set forth below.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE EQUAL PAY ACT AND DISCRIMINATION
– 6 –

24. Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on March 30, 2016. Attached hereto as Exhibit 2, and incorporated herein is the EEOC's right to sue letter. Thus, plaintiff has exhausted her administrative remedies.

**FIRST CAUSE OF ACTION**
**Violation of the Equal Pay Act**
(29 U.S.C § 206(d))

25. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 24, with the same force and effect as if fully realleged and recited herein at length.

26. The Federation has discriminated and continues to discriminate against Plaintiff and similarly situated WNT players in violation of the Equal Pay Act ("EPA") by paying its female WNT employees at wage rates less than the wage rates paid to its male MNT employees for substantially equal or similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

27. The Federation's failure to pay the women on the WNT and men on the MNT equal wages for performing substantially equal or similar work is not justified by any lawful reason.

28. The Federation has willfully violated the EPA by intentionally, knowingly, and/or deliberately paying women on the WNT less than men on the MNT for substantially equal or similar work.

29. As a result of the Federation's ongoing conduct, violation of the EPA, and/or willful discrimination, Plaintiff and similarly situated former and current WNT members have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

30. Plaintiff and similarly situated former and current women on the WNT are therefore entitled to all legal and equitable remedies available under law, including wages,

1  interest, and liquidated damages.

2        WHEREFORE, Plaintiff prays for judgment as set forth below.

### SECOND CAUSE OF ACTION

### Sex Status Discrimination

( Title VII, 42 U.S.C. § 2000e, et seq.)

6      31.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 30, with the same force and effect as if fully realleged and recited herein at length.

9      32.    The Federation has discriminated and continues to discriminate against Plaintiff in violation of the Title VII, 42 U.S.C. § 2000e, et seq. ("Title VII")) by paying its female WNT employees at wage rates less than the wage rates paid to its male MNT employees for substantially equal or similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

14      33.    The Federation's failure to pay women on the WNT and men on the MNT equal wages for performing substantially equal or similar work is not justified by any lawful reason.

16      34.    The Federation has willfully violated the Title VII by intentionally, knowingly, and/or deliberately paying women on the WNT less than men on the MNT for substantially equal or similar work.

19      35.    As a result of the Federation's ongoing conduct, violation of Title VII, and/or willful discrimination, Plaintiff and similarly situated former and current WNT members have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

23      36.    Plaintiff and similarly situated former and current WNT members are therefore entitled to all legal and equitable remedies available under law, including wages, interest, and liquidated damages.

      WHEREFORE, Plaintiff prays for judgment as set forth below.

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE EQUAL PAY ACT AND DISCRIMINATION
– 8 –

**PRAYER**

WHEREFORE, Plaintiff prays judgment against defendants as follows:

1. For compensatory damages in an amount to be proven at trial;
2. For general and special damages in an amount to be proven at trial;
3. For punitive damages, according to proof;
4. For liquidated damages, according to proof;
5. For costs of suit, including reasonable attorney's fees; and
6. For such other relief as the court may deem just and proper.

DATED: February 18, 2019

By /S/ _____
TIMOTHY W. MOPPIN, ESQ.
Attorneys for Plaintiff
HOPE SOLO

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE EQUAL PAY ACT AND DISCRIMINATION
– 9 –