SEYFARTH SHAW LLP
Ellen E. McLaughlin (IL 6181045) (admitted pro hac vice)
emclaughlin@seyfarth.com
Cheryl A. Luce (IL 6313386) (admitted pro hac vice)
cluce@seyfarth.com
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone:   (312) 460-5000
Facsimile:   (312) 460-7000

SEYFARTH SHAW LLP
Chantelle C. Egan (SBN 257938)
cegan@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:   (415) 397-2823
Facsimile:   (415) 397-8549
Seyfarth Shaw LLP

Attorneys for Defendant
UNITED STATES SOCCER FEDERATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOPE SOLO,<br><br>             Plaintiff,<br><br>     v.<br><br>UNITED STATES SOCCER FEDERATION,<br><br>             Defendants. | Case No. 3:18-cv-05215 JD<br><br>**DEFENDANT UNITED STATES SOCCER FEDERATION, INC.'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date Filed: February 18, 2019<br>Trial Date: None Set<br><br>**DEMAND FOR JURY TRIAL** |

Defendant United States Soccer Federation, Inc. ("Defendant" or "U.S. Soccer"), pursuant to Federal Rules of Civil Procedure 8 and 12, submits the following Answer and Affirmative Defenses to the Complaint filed by Plaintiff Hope Solo ("Plaintiff" or "Solo"). U.S. Soccer intends no implied admissions, and unless an allegation is expressly admitted in this Answer, the allegation is denied.

**PARTIES**

1. Answering paragraph 1, U.S. Soccer is without knowledge or information sufficient to form a belief as to where Solo resides. U.S. Soccer admits the remaining allegations in this paragraph.

2. Answering paragraph 2, U.S. Soccer admits that it is a not-for-profit organization organized under the laws of the State of New York and that it employs individuals as contracted members of the U.S. Women's National Women's Team ("USWNT"). US Soccer denies the remaining allegations in this paragraph.

3. Answering paragraph 3, U.S. Soccer denies that there is more than one defendant named in this action and denies the allegations in this paragraph.

**JURISDICTION AND VENUE**

4. Answering paragraph 4, U.S. Soccer admits that this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and that it has a principal place of business in Chicago, Illinois. U.S. Soccer denies the remaining allegations in this paragraph.

**GENERAL ALLEGATIONS**

5. Answering paragraph 5, U.S. Soccer admits that it formerly employed Solo as a contracted member of the USWNT and that it employs players as members of the U.S. Men's National Team ("USMNT"). U.S. Soccer denies that it violated the Equal Pay Act or discriminated against Solo in any way and denies the remaining allegations in this paragraph.

6. Answering paragraph 6, U.S. Soccer admits that the USWNT players negotiated with U.S. Soccer to reach mutually agreeable compensation terms that were memorialized in a collective bargaining agreement ("CBA") effective 2005 through 2012, and that the parties executed a Memorandum of Understanding ("MOU") with then-executive director John Langel agreeing that the "Terms from the old CBA that we have not addressed remain unchanged unless inconsistent with the memo we will sign." The players voted to approve the MOU on March 18, 2013, with the agreement effective from 2013 through the end of 2016. In 2014, Plaintiff's counsel succeeded Langel as the Players Association's General Counsel and on December 24, 2015, provided notice to U.S. Soccer that the Players Association intended to terminate the MOU and reserved the right to challenge the existence of a CBA between the parties. On June 3, 2016, the Northern District of Illinois entered a declaratory

judgment that the CBA existed as modified by the MOU.  U.S. Soccer denies that the USWNT asked that the USWNT players be compensated under a "pay-for-play" structure like the USMNT players; to the contrary, the USWNT has consistently rejected all proposals, most recently offered by U.S. Soccer during CBA negotiations in 2017 for the 2017-2021 CBA, for a "pay-for-play" structure similar to the one that the USMNT players accepted in their 2011-2018 CBA. Further answering, U.S. Soccer states that the USWNT chose to negotiate low-risk, guaranteed six-figure salaries and valuable benefits in lieu of being compensated solely through high-risk match appearance fees. U.S. Soccer denies that the USWNT and USMNT provide the same services, under the same working conditions, or in similar venues for U.S. Soccer and affirmatively states that the USWNT and USMNT play against different opponents in different competitions, venues, and countries at different times and are comprised of athletes who have different obligations, are compensated in fundamentally different ways, and enjoy different benefits under their separate CBAs. U.S. Soccer admits that the USWNT won Gold Medals at the Olympics in 2004, 2008, and 2012 and that it won the 2015 Women's World Cup. US Soccer denies the remaining allegations in this paragraph

7. Answering paragraph 7, U.S. Soccer denies that it ever "rebuffed" the USWNT's demands and affirmatively states that during the entire period relevant to Solo's claims, and indeed throughout Solo's playing career with the USWNT, the USWNT CBA contained a pay equity clause that ensured that the USWNT players' compensation remained proportional to the revenue that the USWNT generated as compared to the compensation paid to the USMNT players. U.S. Soccer denies the remaining allegations in this paragraph.

8. Answering paragraph 8, U.S. Soccer admits that the USWNT program has won numerous international tournaments, including three World Cup titles and four Olympic Gold Medals (three under Solo's tenure), and that the USWNT has been the most successful women's soccer team at the international level. U.S. Soccer admits that the USWNT is consistently ranked first in the FIFA Women's World Rankings and, as of the date of this filing, is ranked as the number one women's soccer team by FIFA. U.S. Soccer denies the remaining allegations in this paragraph.

9. Answering paragraph 9, U.S. Soccer admits that the USWNT won the 2015 FIFA Women's World Cup title and that the 2015 FIFA Women's World Cup final match drew millions of

viewers and broke the record for being the most watched soccer match shown on English-language television in the United States. U.S. Soccer further admits that the USWNT's 2015 Victory Tour drew tens of thousands of fans to stadiums across the United States. U.S. Soccer denies the remaining allegations in this paragraph.

10. Answering paragraph 10, U.S. Soccer admits that USWNT and USMNT combined exceeded profitability expectations in FY2016, but notes that the FY2017 actuals for the USWNT were substantially less than projected.. U.S. Soccer denies the remaining allegations in this paragraph.

11. Answering paragraph 11, U.S. Soccer denies that Solo earned less than comparable USMNT players and affirmatively states that Solo often earned more in her position as the USWNT goalie than individuals in the position of goalie for the USMNT earned during the relevant period, playing in more games in some instances and in every instance, playing different competition at different times and different locations. U.S. Soccer denies that the USWNT is paid inequitably and affirmatively states that USWNT and USMNT players negotiated fundamentally different pay structures (guaranteed salaries as opposed to high-risk match appearance fees) for performing different work under their separate collective bargaining agreements that require different obligations and responsibilities. U.S. Soccer denies that any law requires the USWNT and USMNT to be compensated in the exact same manner and denies the remaining allegations in this paragraph.

12. Answering paragraph 12, although U.S. Soccer admits that the USWNT and USMNT are both expected to comply with their travel, training, and other obligations under their separate CBAs, U.S. Soccer denies that the USWNT and USMNT play soccer under the same working conditions or in the same markets or against the same competition and denies that any greater success that the USWNT has had against other female national soccer teams reflects any greater skill, effort, or responsibilities as compared to the USMNT. U.S. Soccer denies that the success of the USWNT "has meant and continues to mean that the WNT spends more time in training camp, play far more games, travel more, and participate in more media sessions, among other things, than MNT players." U.S. Soccer denies the remaining allegations in this paragraph.

13. Answering paragraph 13, U.S. Soccer denies that USWNT players and USMNT players are comparable as a matter of law and denies the remaining allegations in this paragraph.

14.     Answering paragraph 14, U.S. Soccer denes that paragraph 14 accurately describes the USWNT's compensation structure because the allegations in this paragraph wholesale ignore the guaranteed salaries and benefits that the USWNT players negotiated in addition to Friendly match appearance fees, World Cup and Olympic tournament roster fees, and other compensation. Further answering, U.S. Soccer affirmatively states that, by contrast, the USMNT does not enjoy guaranteed salaries and benefits; rather, the USWNT and USMNT have entirely different compensation structures that they negotiated separately that cannot be compared as a matter of law. U.S. Soccer denies the remaining allegations in this paragraph.

15.     Answering paragraph 15, U.S. Soccer denies the allegations in this paragraph and affirmatively states that these allegations ignore the guaranteed salaries and benefits U.S. Soccer paid to the USWNT. Further answering, U.S. Soccer states that the highest paid USWNT players often earned more than the highest paid USMNT players in a given year during the period relevant to Solo's claims, even before valuing the benefits and other non-monetary compensation provided to USWNT players.

16.     Answering paragraph 16, U.S. Soccer denies that the USWNT played 20 Friendlies in 2014, 2015, or 2016 and affirmatively states the number 20 is an arbitrary and irrelevant number concocted by Plaintiffs to devalue the guaranteed salaries paid to USWNT players. U.S. Soccer also denies that the USWNT did not receive any compensation in addition to the Friendly match appearance fees and affirmatively states that they enjoyed guaranteed salaries and benefits *in addition to these fees*. In 2015, for example, Solo made in excess of $300,000, more than any individual MNT player. U.S. Soccer denies the remaining allegations in this paragraph.

17.     Answering paragraph 17, U.S. Soccer denies that the USMNT is required to play a minimum of 20 Friendlies per year but affirmatively states that foreign member associations offer valuable match fees to U.S. Soccer for USMNT Friendlies out of the country that have never been available for USWNT Friendlies out of the country.  U.S. Soccer denies that USMNT players not on the roster are paid Friendly match appearance fees, regardless of outcome, and affirmatively states that USMNT players are only paid Friendly match appearance fees (and any other match appearance fee, for that matter) if they are on the roster for the applicable match or, if applicable, the tournament. U.S. Soccer admits that the USMNT's match appearance fees vary based on the FIFA ranking of their

opponent, which reflects the fact that the USMNT and USWNT face different international competition. U.S. Soccer further asserts that the phrase "top tier" is vague but states that USMNT players receive a flat payment for friendly match appearances only if they are on the USMNT roster for the applicable match, and that these flat payments vary depending on the FIFA ranking of the opponent and whether the game resulted in a win, loss, or a draw (ranging from $4,000 to $17,625 in the relevant period). U.S. Soccer denies the remaining allegations in this paragraph.

18. Answering paragraph 18, U.S. Soccer denies that the USWNT players do not earn compensation in addition to the match appearance fees and affirmatively states that the USWNT players (unlike the USMNT players) earn guaranteed salaries and benefits in addition to match appearance fees; indeed, these salaries and benefits are their core negotiated compensation. U.S. Soccer denies that the USMNT has played 20 or more matches (much less Friendlies) in any year relevant to Solo's claims. U.S. Soccer denies the remaining allegations in this paragraph.

19. Answering paragraph 19, U.S. Soccer denies that the fact that the USWNT won the 2015 FIFA Women's World Cup indicates that they performed demonstrably better than the USMNT in the 2014 FIFA Men's World Cup because the USWNT and USMNT face entirely different international competition. U.S. Soccer denies that the roster bonus numbers provided above are accurate for the USWNT in any World Cup year and affirmatively states that the numbers above substantially overstate the amount available to the USMNT in 2014, and further denies that Paragraph 19 accurately depicts "tryouts" for any World Cup. U.S. Soccer further denies that USMNT players earned $68,750 for making a World Cup roster because they made far less for making the 2014 roster and did not receive any guaranteed salaries or benefits in addition to their match appearance fees. Further answering, U.S. Soccer states that FIFA rewards teams that succeed in the Women's World Cup and Men's World Cup with drastically different prize money and this prize money is the revenue U.S. Soccer derives from each team's participation in the World Cup tournaments. U.S. Soccer affirmatively states that it paid the USWNT in excess of $2,000,000 for competing in and winning the FIFA World Cup in 2015 (excluding qualification bonuses), or more than 100% of the prize money received from FIFA, and paid substantially less than 100% of the 2014 FIFA World Cup prize money to the USMNT. U.S. Soccer denies the remaining allegations in this paragraph.

20. Answering paragraph 20, U.S. Soccer denies that the USMNT or any U23 team earns anything for qualifying for or competing in the Olympics—a situation similar to many, if not most, Olympic athletes who generally are not paid by their respective national governing bodies merely for competing. U.S. Soccer affirmatively states that the USWNT in 2016 received $15,000 per player for making the Olympic roster and that this compensation for the Olympics is not available to any USMNT or U-23 player for qualifying for the Olympics. U.S. Soccer denies the remaining allegations in this paragraph.

21. Answering paragraph 21, U.S. Soccer denies the allegations in this paragraph, which, again, among other issues, fail to account for the guaranteed salaries, benefits, and other compensation that the USWNT receives and that the USMNT does not.

22. Answering paragraph 22, U.S. Soccer denies the allegations in this paragraph and affirmatively states that USWNT players are not necessarily compensated less than the USMNT players in any given year and any negative differential in compensation paid to USWNT players and USMNT players has nothing to do with their sex but is the result of legitimate, non-discriminatory reasons.

23. Answering paragraph 23, U.S. Soccer denies the allegations in this paragraph.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

24. Answering paragraph 24, U.S. Soccer admits that Solo filed a charge with the EEOC on March 30, 2016 and received a notice of right to sue. U.S. Soccer admits that U.S. Soccer exhausted her administrative remedies to the extent that her claims are like or reasonably related to the allegations in her charge. U.S. Soccer denies the remaining allegations in this paragraph.

## FIRST CAUSE OF ACTION
### Violation of the Equal Pay Act
(29 U.S.C § 206(d))

25. Answering paragraph 25, U.S. Soccer realleges and incorporates by reference its answer to each and every allegation contained in paragraphs 1 through 24 as though fully set forth herein.

26. Answering paragraph 26, U.S. Soccer denies the allegations in this paragraph. Further answering, U.S. Soccer states that Solo fails to identify any USMNT player who earned more than she earned during the relevant period and that Solo earned more in total compensation than many USMNT players during the relevant period.

27. Answering paragraph 27, U.S. Soccer denies the allegations in this paragraph.

28. Answering paragraph 28, U.S. Soccer denies the allegations in this paragraph.

29. Answering paragraph 29, U.S. Soccer denies the allegations in this paragraph.

30. Answering paragraph 30, U.S. Soccer denies the allegations in this paragraph.

### SECOND CAUSE OF ACTION
#### Sex Status Discrimination
(Title VII, 42 U.S.C. § 2000e, et seq.)

31. Answering paragraph 31, U.S. Soccer realleges and incorporates by reference its answer to each and every allegation contained in paragraphs 1 through 30 as though fully set forth herein.

32. Answering paragraph 32, U.S. Soccer denies the allegations in this paragraph.

33. Answering paragraph 33, U.S. Soccer denies the allegations in this paragraph.

34. Answering paragraph 34, U.S. Soccer denies the allegations in this paragraph.

35. Answering paragraph 35, U.S. Soccer denies the allegations in this paragraph.

36. Answering paragraph 36, U.S. Soccer denies the allegations in this paragraph.

### AFFIRMATIVE AND OTHER DEFENSES

Without assuming the burden of proof for such defenses that it would not otherwise have, U.S. Soccer asserts the following affirmative and other defenses:

### First Affirmative Defense

U.S. Soccer's challenged pay practices are not based on sex, and any alleged pay differential between Plaintiff and allegedly comparable USMNT players is based on differences in the aggregate revenue generated by the different teams and/or any factors other than sex.

### Second Affirmative Defense

To the extent Plaintiff seeks punitive damages, they are barred because the alleged acts or omissions of U.S. Soccer fail to rise to the level required to sustain an award of punitive damages, do not evidence a malicious, reckless or fraudulent intent to deny Plaintiff her protected rights, and are not so wanton or willful as to support an award of punitive damages.

### Third Affirmative Defense

Plaintiff is not entitled to liquidated damages because U.S. Soccer made good faith efforts to comply with all applicable laws and regulations.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

### Fourth Affirmative Defense

Plaintiff's claims are barred to the extent that they fall outside of the applicable statute of limitations.

### Fifth Affirmative Defense

Plaintiff's claims arising under Title VII are barred to the extent that Plaintiff failed to exhaust her administrative remedies.

### Sixth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, to the extent that they conflict with the authority granted to U.S. Soccer by the Ted Stevens Olympic and Amateur Sports Act and/or are within the exclusive jurisdiction of the United States Olympic Committee.

### Seventh Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because every decision U.S. Soccer made with respect to the conduct alleged in the First Amended Complaint was for legitimate business reasons and not for any discriminatory or other unlawful purpose.

### Eighth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff approved each and every CBA with U.S. Soccer, each of which included a pay equity savings clause.

DATED: June 24, 2019

Respectfully submitted,

SEYFARTH SHAW LLP

By: *s/ Ellen E. McLaughlin*
Ellen E. McLaughlin
Attorneys for Defendant
UNITED STATES SOCCER FEDERATION